64757. TODD et al. v. PHYSICIANS & SURGEONS COMMUNITY HOSPITAL, INC. et al.

McMURRAY, Presiding Judge.

Doctors Todd and Poeppelman are podiatrists (Doctors of Podiatric Medicine) duly licensed to practice podiatric medicine in the State of Georgia. Dr. Todd was a member in good standing of the

Active Medical Staff at Physicians & Surgeons Community Hospital, Inc., while Dr. Poeppelman was a member of the Courtesy Medical Staff at this hospital. As such members they were accorded full podiatrist's privileges including the right to admit and treat patients at the hospital. Subsequently, on November 30, 1978, the board of directors of the hospital corporation approved a new article of the corporate bylaws concerning the hospital's medical staff so as to allow only doctors eligible for membership in the American Medical and American Dental Associations to practice or be appointed to the medical staff, and specifically deleted provisions allowing podiatrists to be appointed to the staff. Dr. Todd and Dr. Poeppelman were then notified during the month of December that their medical staff privileges would terminate as of December 31, 1978, and that they would not be appointed to the staff for the year 1979.

The hospital operates under a permit, issued by the Georgia Department of Human Resources, as required by Code Ann. § 88-1905 (Ga. L. 1964, pp. 499, 612; 1981, p. 920, effective July 1, 1981) (now OCGA § 31-7-3, effective November 1, 1982). In April 1979 the hospital was purchased and became a wholly owned subsidiary of Southern Health Services of Georgia, Inc., which had prior to that date represented the hospital under a management contract. The hospital is a certified health care provider under the Medicaid and Medicare programs (Federal) and derives over 55% of its revenues through its participation in these programs.

With the adoption of the new article of the bylaws, as doctors of podiatric medicine are not eligible for membership in the American Medical Association or the American Dental Association, the above doctors were not reappointed to the staff. Whereupon, they requested a hearing and appellate review with respect to the refusal of the hospital to reappoint them to the staff. Their requests for hearings were subsequently denied. Since January 1, 1979, they have been unable to admit or treat patients at the hospital, although they have had privileges at other Atlanta hospitals for treatment of podiatric patients.

Generally, all medical staff personnel other than physicians who are under contract with this hospital, are informed that they are appointed to the medical staff for one year periods and are given no guarantee of reappointment. The defendant Southern Health Services of Georgia, Inc. has never been issued a certificate of need by the State Health Planning and Development Agency of Georgia and same was not required by the state at the time of the hospital's acquisition by Southern Health Services of Georgia, Inc. The defendant hospital has not received approval from the State Health Planning and Development Agency nor the North Central Health

Systems Agency for Capital Expenditures to establish a rehabilitation unit because such expenditures were not large enough to require approval. The hospital has never operated for-profit medical clinics on premises owned by the Atlanta Housing Authority, nor has it been licensed by the Atlanta Housing Authority to operate such a medical clinic. At one time the hospital and Southern Health Services of Georgia, Inc. did derive income from the Head Start Program, but since September 1979 the hospital has not received any money from the state or federal governments under the Head Start Program as it no longer has any such contract.

After Dr. Todd and Dr. Poeppelman were notified of their loss of medical staff privileges and the adverse decision of their request for a hearing they filed suit against Physicians & Surgeons Community Hospital, Inc. and Southern Health Services of Georgia, Inc., the various directors and officers of the two defendant corporations and the administrator of the hospital who had advised them that they no longer were members in good standing and were not afforded full podiatric privileges. Their action set forth in substance the above facts contending they had been wrongfully terminated from practicing their profession at the hospital without regard to and in contravention of the reappointment procedures set forth in the hospital medical staff bylaws. They allege that the acts of all the defendants amount to a conspiracy to injure them and has caused them to suffer irreparable damage to their business and professional reputations in summarily terminating their medical staff privileges in an unreasonable, arbitrary, and capricious manner amounting to invidious discrimination in violation of the equal protection of the law guaranteed by the federal and state constitutions. In Count 1 they sought injunctive relief. In Count 2 they allege the conspiracy amounts to a restraint of trade and free and open competition in violation of Code Ann. § 26-2308 (Ga. L. 1968, pp. 1249, 1308) (now OCGA § 16-10-22, effective November 1, 1982), seeking injunctive relief as having no adequate remedy at law. In Count 3 they allege breach of a contract resulting in irreparable injury unless the defendant hospital corporation is compelled to reinstate them to membership. In Counts 4 and 5 they contend the loss of privileges resulted from malicious and wrongful acts of the conspirators for which they sought exemplary damages in Count 4, and compensatory and exemplary damages in Count 5. They prayed for permanent injunctive relief including an interlocutory injunction, a declaration that the amended corporate bylaws adopted be declared to be unconstitutional and invalid, the issuance of a mandatory order requiring the reinstatement of the original corporate bylaws as they existed prior to the unconstitutional amendment thereto, and for

judgment against the defendants, jointly and severally, in favor of plaintiff Todd in the amount of $5,000, plus an additional $5,000 for each month subsequent to January 1979 during which time he was denied reappointment; $25,000 for injury resulting from defamation of his professional reputation and $25,000 exemplary damages. As to plaintiff Poeppelman, judgment against the defendants was sought, jointly and severally, in the amount of $1,000, plus an additional $1,000 for each month subsequent to January 1979 during which time he was denied reappointment to the medical staff, plus $25,000 resulting from defendants' defamation of his professional reputation, plus $25,000 exemplary damages; and for such other and further relief as the court deemed just and proper. Each plaintiff also sought attorney fees and costs of court.

The defendants answered separately denying the claims and some of the individual defendants cross-claimed against the corporate defendants in the event judgment was obtained against them. However, certain of the defendants later voluntarily dismissed without prejudice their cross-claims, and the plaintiffs also voluntarily dismissed without prejudice certain of the individual defendants.

A motion for interlocutory injunction was heard and denied, the trial court finding that the hospital corporation had properly amended its corporate bylaws to limit membership in its medical staff to physicians and dentists eligible for membership in the American Medical Association and the American Dental Association and because plaintiffs had failed to show they had suffered irreparable harm or to have an inadequate remedy at law.

After discovery the defendants moved for summary judgment, and after further discovery the plaintiffs also filed a motion for partial summary judgment as to liability against defendant Physicians & Surgeons Community Hospital, Inc. under Counts 1 and 3.

Based upon the above-admitted and stipulated facts which the court determined in its findings of fact in considering defendants' motion for summary judgment and plaintiffs' cross-motion for partial summary judgment as to Counts 1 and 3, the trial court concluded that all the remaining defendants (some of the individual defendants having been dismissed by plaintiffs without prejudice) were entitled to summary judgment on all counts and denied plaintiffs' motion for partial summary judgment on Counts 1 and 3 (order dated May 22, 1981, filed May 26, 1981). The court therein concluded as a matter of law that the defendants' actions did not constitute state action in the receipt of medicare and medicaid funds by defendant hospital, its licensing by the state and its regulation as a

certified provider under the medicare and medicaid programs, citing such cases as Jackson v. Metropolitan Edison Co., 419 U. S. 345 (95 SC 449, 42 LE2d 477); Madry v. Sorel, 558 F2d 303; and Greco v. Orange Memorial Hosp. Corp., 513 F2d 873 (see plaintiffs' claims as to Count 1). As to plaintiffs' claims with reference to Count 2 brought under the criminal statute (Code Ann. § 26-2308, supra) designed to punish persons who entered into contracts, combinations or conspiracies in restraint of trade or restraint of free and open competition in any transaction with the state, or any agency thereof, no showing has been made that plaintiffs' exclusion from the staff of the hospital is a result of a conspiracy to restrict their participation in receiving medicare and medicaid monies for the treatment of patients. There was no direct transaction with the state or an agency of the state involved so as to make the criminal statute applicable. As to plaintiffs' Count 3, the trial court concluded, as a matter of law, that no contract exists between the plaintiffs and the defendants which has been breached by defendants. The court further found that the medical staff bylaws do not constitute a contract between the plaintiffs and defendants and there is no contract or agreement between the defendant hospital and the plaintiffs as to the existence of any bylaw which would make the plaintiffs perpetually or for any designated length of time eligible for reappointment. As to Count 4 with reference to tortious interference with plaintiffs' business, the court held that the managing authorities of the hospital, under the power to adopt reasonable rules and regulations for the government and operation thereof, could, in the absence of any statutory restriction, prescribe the qualifications of physicians or surgeons for admission to practice therein, citing *Yeargin v. Hamilton Memorial Hosp.,* 229 Ga. 870, 873 (3) (195 SE2d 8); *Dunbar v. Hospital Auth. of Gwinnett County,* 227 Ga. 534 (1), 540-541 (182 SE2d 89); *Cobb County-Kennestone Hosp. Auth. v. Prince,* 242 Ga. 139, 144-150 (249 SE2d 581). As to Count 5 of plaintiffs' complaint, the court held that the defendants in adopting the corporate bylaw changing staff eligibility requirements and in refusing to reappoint the plaintiffs to the medical staff was not defamatory, the corporate bylaw being adopted in the performance of a private duty as contemplated by Code § 105-709 (2) (now OCGA § 51-5-7 (2), effective November 1, 1982) and that there had been no publication without the hospital, no reasonable personal application of the alleged defamatory words to the plaintiffs and the bylaw was truthful in that it accurately stated the hospital corporation's position as to medical staff eligibility requirements. The defendants then filed a further motion for summary judgment seeking clarification of the order granting summary judgment to all of the defendants and denying plaintiffs'

motion for partial summary judgment contending that they were uncertain as to whether or not judgment had been rendered against plaintiffs on Count 6, an amendment offered by the plaintiffs contending that the defendant hospital corporation was contractually bound to the United States Department of Health and Welfare, Social Security Administration, or other governmental agencies charged with the responsibility of administering said health care programs to operate its business in accordance with the governmental regulations concerning defendant hospital's participation in said governmental health care programs which required that under no circumstances is the accordance of staff membership or professional privileges in the hospital dependent solely upon certification, fellowship or membership in a specialty body or society as all qualified candidates are considered by the credentials committee. Plaintiffs therein contend that amending the corporate bylaws so as to refuse to permit the plaintiffs to use the facilities as not being members of the American Medical Association or the American Dental Association constituted a breach of its contract with the federal agencies and under Code Ann. § 3-108 (Ga. L. 1949, p. 455) (now OCGA § 9-2-20, effective November 1, 1982) and the plaintiffs were beneficiaries of the contract between defendant hospital and the United States Department of Health and Welfare and they are entitled to maintain an action against the defendant promissors on the contract and require that the contract be specifically enforced. The plaintiffs prayed for specific performance of said contractual arrangements. This amendment was filed May 8, 1981. Note here that summary judgment in favor of defendants was filed on May 26, 1981.

After further discovery the court considered defendants' motion for summary judgment as to Count 6 and plaintiffs' motion for partial summary judgment, as to liability, as to the same count. The court adopted and included the findings of fact of the original order of May 26, 1981, and found as a matter of fact that if any agreement or contract exists between the defendant hospital and the United States Department of Health and Welfare the defendants did not intend for the plaintiffs to be third-party beneficiaries of any such contract; concluding that the express congressional intent with reference to medicare and medicaid did not so provide that the plaintiffs are beneficiaries, citing therein 42 USC ¶ 1395 that nothing in the statute shall be construed to authorize any federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency or person providing health services or to exercise

any supervision or control over the administration or operation of any such institution, agency or person; and also citing Robinson v. Magovern, 456 FSupp. 1000. The court then denied plaintiffs' motion for partial summary judgment as to the amended Count 6 and again granted defendants' motion for summary judgment on all counts as to the remaining defendants. Plaintiffs appeal. *Held:*

Plaintiffs enumerate errors to the holding by the court that the actions of the defendants did not constitute "state action" with respect to their Count 1; did not amount to acts in concert to breach the defendant hospital's contractual obligations to plaintiffs (Counts 3 and 6); and did not amount to an action of conspiracy in restraint of trade and in restraining free and open competition and tortious interference with the lawful business of the plaintiffs (Counts 2 and 4).

First of all, this is not a "state action" case such as those found in Shaw v. Hospital Auth. of Cobb County, 507 F2d 625 and Sosa v. Bd. of Managers, Val Verde Memorial Hosp., 437 F2d 173. Compare Greco v. Orange Memorial Hosp. Corp., 513 F2d 873, supra. This hospital is a private one operated for profit and is in no significant way related to the state or federal government such that its action could be deemed to be actions of the state or federal government. The state in no way acted here to deprive the plaintiffs of constitutionally protected rights. Mere recognition of a private entity does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment. See Jackson v. Metropolitan Edison Co., 419 U. S. 345, 354, supra; Moose Lodge No. 107 v. Irvis, 407 U. S. 163, 176-177 (92 SC 1965, 32 LE2d 627). We find no merit in this complaint.

As to the second complaint we do not find the existence of any contractual obligation by and between the plaintiffs and the defendants. It has been held that the managing authorities of a hospital, under the power to adopt reasonable rules and regulations for the government and operation thereof, may, in the absence of any statutory restriction, prescribe the qualifications of physicians or surgeons for permission to practice therein. See *Yeargin v. Hamilton Memorial Hosp.,* 229 Ga. 870, 873, supra; *Dunbar v. Hosp. Auth. of Gwinnett County,* 227 Ga. 534 (1), supra; *Cobb County-Kennestone Hosp. Auth. v. Prince,* 242 Ga. 139, supra. The corporate defendants having the power and authority to promulgate rules and regulations setting forth the requirements and qualifications necessary to gain appointment to the medical staff of the hospital cannot be said to have violated any contractual obligations with the plaintiffs in changing their bylaw as was the case here. As to the medicare and medicaid programs which are carried out for the benefit of the

recipients as patients the plaintiffs are not the intended beneficiaries and thus they are not entitled to enforce any contractual arrangement which the hospital may have with the governmental agency. The mere fact that the plaintiff doctors would benefit from performance of an agreement with reference to treatment at the hospital of the patients is insufficient to give them any rights or to create or make them contracting parties with enforceable rights. See in this connection *Backus v. Chilivis,* 236 Ga. 500, 501-503 (II) (224 SE2d 370); *LDH Properties v. Morgan Guaranty Trust Co.,* 145 Ga. App. 132, 133-134 (2) (243 SE2d 278); *Lee v. Petty,* 133 Ga. App. 201, 205-206 (210 SE2d 383). The enumeration of error complaining of alleged error in denying the existence of contractual obligations in favor of the plaintiffs is not meritorious.

As no state action exists there could be no violation of Georgia law involving the criminal statute (Code Ann. § 26-2308, supra). The defendants having an absolute right to change the bylaws with reference to the hospital's use by doctors there could be no conspiracy in restraint of trade or conspiracy to restrain free and open competition with the state. The enumeration of error contending that such conspiracy existed is not meritorious.

For all of the foregoing reasons the trial court did not err in granting summary judgment in favor of the remaining defendants.

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED FEBRUARY 15, 1983 —
REHEARING DENIED MARCH 8, 1983.

*Mary Margaret Oliver,* for appellants.
*R. Harold Meeks, Jr.,* for appellees.