Sheila **WOLF**, Plaintiff,

v.

THE **COCA–COLA COMPANY**, Eileen Hilburn, Joe Fortune, Ben Hilburn, Tammy Johnson, and Robert Max, Defendants.

No. Civ.A. 1:96–CV–0562–GET.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 13, 1998.

E. Ray Stanford, Jr., Irvan Stanford & Kessler, Atlanta, GA, for Plaintiff.

Elizabeth Finn Johnson, The Coca–Cola Co., Michael Wayne Johnston, King & Spalding, Atlanta, GA, for Defendants.

## ORDER

G. ERNEST TIDWELL, Chief Judge.

The above-styled matter is presently before the court on defendants' motion for summary judgment [docket no. 61–1] and plaintiff's motion for conditional stay [docket no. 64–1].

### Background

Plaintiff Sheila Wolf ("Wolf") originally filed this action on March 4, 1996 alleging that defendants, through their conduct, were liable to plaintiff for the following: 1) intentional infliction of emotional distress; 2) tortious interference with employment with defendant The Coca–Cola Company ("Coca–Cola"); 3) tortious interference with employment at Access, Inc. ("Access"); 4) breach of pension and welfare plan, 29 U.S.C. § 1001 *et seq.*, ("ERISA"); 5) failure to provide continuing health and medical coverage under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq.*, ("COBRA"); 6) retaliatory discharge under ERISA; 7) failure to pay overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"); 8) retaliation under the FLSA; 9) breach of contract with Coca–Cola; 10) breach of contract with Access; and 11) compensation owed for non-ERISA benefits.

### 1. *Plaintiff's motion for conditional stay* [docket no. 64–1]

Plaintiff's motion requests that, in the event the court grants plaintiff's motion for partial summary judgment [docket no. 63–1] on the issue of her employment status, the court stay the proceedings with respect to count IV (ERISA), count V (COBRA) and count XI (non-ERISA benefits) of the complaint. According to plaintiff, at that point, the remaining issues involved in these claims would be best resolved through mediation or other informal means.

Because the court denied plaintiff's motion for partial summary judgment [docket no. 63–1] in an oral hearing on October 26, 1998, plaintiff's motion for conditional stay [docket no. 64–1] is also DENIED.

### 2. *Defendants' motion for summary judgment* [docket no. 61–1]

Defendants have moved for judgment as a matter of law on all plaintiff's claims.

### Standard

Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of it motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-

moving party's case." *Id.* at 325, 106 S.Ct. 2548; *see also U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir. 1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. *Celotex,* 477 U.S. 317, 324 (11th Cir.1991). The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. 2505; *Rollins v. TechSouth, Inc.* 833 F.2d 1525, 1529 (11th Cir.1987). However, an issue is not genuine if it is unsupported by evidence that is "merely colorable" or is not "significantly probative." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. 2505. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of the necessary element. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

For the purposes of the summary judgment motion only, the court relies on the following findings of fact which, unless otherwise indicated, are not disputed.

### Findings of Fact

Plaintiff Wolf is a citizen of Florida currently residing in Broward County. Defendant Coca–Cola is a corporation incorporated in the State of Delaware with its principal place of business in the State of Georgia. Coca–Cola is involved in the business of developing, marketing and distributing soft-drink syrups and concentrates throughout the United States. Access is a staffing company located in Atlanta, Georgia which provides computer programmers and analysts to companies throughout the Southeast. Access is a separate entity from defendant Coca–Cola.

Plaintiff began performing services as a computer programmer/analyst for Coca–Cola beginning in February 1988 until she was terminated in March 1994. Plaintiff originally heard of the position after answering an advertisement placed by Access. Generally, Access places advertisements seeking individuals to fill certain positions. If Access determines that an applicant meets certain criteria established by Coca–Cola, the applicant is then interviewed by Coca–Cola employees who make the ultimate decision as to whether applicant will be used. In this case, before plaintiff commenced work, she met with Coca–Cola employees, Eileen Hilburn ("E.Hilburn") and Tom Leaming ("Leaming"). Coca–Cola provided her with a desk, office space, computers and other materials needed to perform her work.

Plaintiff did not meet with a representative from Access until after she had been working at Coca–Cola for a few days. Lance Herndon ("Herndon"), an Access representative, met with plaintiff and asked her to sign the one and only agreement she ever signed with Access. Plaintiff was referred to as an "independent contractor" in the agreement. Access never promised plaintiff that she would be employed by Access for any period of time or that her services could not be terminated except for cause. Furthermore, plaintiff had no agreement, written or oral, with Coca–Cola regarding her status. Plain-

tiff's employment was governed by a series of annual agreements between Access and Coca–Cola, known as Master Agreements and Statements of Work ("SOWs"). The SOWs provided rates of compensation and lengths of employment for plaintiff's work at Coca–Cola.

Regarding payment, plaintiff recorded her hours on a weekly basis and submitted them to defendants for confirmation. Plaintiff contends that Coca–Cola would make payments to Access, who in turn, remitted payments to plaintiff. Defendants allege, however, that plaintiff was paid directly by Access, who then invoiced Coca–Cola for the payment.

Sometime in 1992, plaintiff was assigned to the ICS project ("ICS"). ICS is a group of computer programs which run on the AS/400 computer, a mid-sized computer system. According to defendants, the ICS project began in the late 1980s and was originally intended to provide a short term computerized solution to Coca–Cola's need to track the whereabouts and status of fountain equipment. Around that same time, Coca–Cola began development of the Fountain Equipment Tracking System ("FET"). FET, which is much more complex than ICS, was designed to be the long term computerized solution to the need to track fountain equipment. Sometime in the early 1990s, Coca–Cola decided to integrate ICS and FET, which meant that ICS had to be upgraded and converted to a permanent system.

Plaintiff's duties with ICS included: 1) analyzing and programming system enhancements; 2) assisting ICS users in resolving day-to-day problems with the system; and 3) working with the Mid-range Computer Support group (the "MCS group"). Plaintiff also assisted in screening new employees for Coca–Cola. While working on the ICS project, plaintiff was supervised by Paul Riley ("Riley") and Robert Harper ("Harper"). Riley report-

ed to defendant Joe Fortune ("Fortune"), who reported to defendant E. Hilburn, Coca–Cola's director of application development.

The MCS group consists of computer programmers, operators and support personnel responsible for maintaining the hardware and operating systems for the various AS/400 computers. The MCS group was managed by defendant Ben Hilburn ("B.Hilburn"). Defendant Robert Max ("Max") was the manager of the MCS group, reporting to B. Hilburn.

In February 1991, Coca–Cola's audit department conducted an audit of the AS/400 environment at Coca–Cola. The audit turned up numerous operational and security deficiencies. MCS was directed to correct these deficiencies in order to secure the AS/400 environment. As a result, MCS took steps to limit the authority that applications support personnel, such as plaintiff, had to affect the internal operations of the AS/400s. The MCS group's efforts to secure the AS/400 environment created tension between the MCS group and the ICS group. Plaintiff alleges that the MCS group's actions were intended to harass plaintiff and interfere with her performance. Plaintiff resisted the MCS' group's efforts to restrict her access to the AS/400 system.

On January 28, 1994, plaintiff contacted ComputerPeople in Florida, a company which provides contract workers to other companies. Plaintiff also sent her resume and applied for a job. She informed ComputerPeople that it would be possible for her to relocate in three weeks.

On February 28, 1994, plaintiff and her counsel E. Ray Stanford, Jr. ("Stanford") met with G. Stephen Spears ("Spears"), human resources director of Coca–Cola, and William J. Bernstein ("Bernstein"), Coca–Cola's senior counsel for labor relations. Plaintiff's counsel requested the meeting on plaintiff's behalf. According to

Bernstein, Stanford claimed that he represented a Coca–Cola employee who had allegations concerning attempted sabotage of various computer applications at Coca–Cola. During the meeting there was a discussion concerning the efforts of defendants Max and Russell to sabotage the ICS application. Plaintiff claims they also discussed how the MCS group was harassing plaintiff. There is a dispute regarding whether plaintiff asserted that she was a Coca–Cola employee during this meeting.

Sometime after the meeting, plaintiff spoke with Riley, the ICS project manager, and told him about the meeting. Whether or not plaintiff informed Riley of her intention to file a lawsuit against Coca–Cola generally, it is undisputed that plaintiff did not tell Riley that she intended to file a lawsuit concerning possible employee benefits. Riley immediately informed his supervisor, defendant Fortune, about his conversation with plaintiff. At that point, defendant Fortune, who had authority to do so, decided to terminate plaintiff.

Soon thereafter, Spears, Bernstein, Herndon, and Fortune met to discuss plaintiff. At that meeting, Fortune informed Herndon, the Access representative, that plaintiff's services would no longer be needed. On March 7, 1995, Herndon informed plaintiff that her services were no longer needed by Coke–Cola. Plaintiff moved to Florida on March 30, 1994 and began working for ComputerPeople.

Coca–Cola provides its regular employees with benefits which may be categorized as ERISA and non-ERISA benefits. The particulars of Coca–Colas's benefits package is set forth in a book entitled, *Your World of Benefits Handbook*.

ERISA benefits, which are provided to "regular" employees of Coca–Cola, include: health, dental, dependent life, life insurance AD & D, business travel accident, dependent care account, flexible spending account, long term disability, employee retirement plan, employee assistance program, survivors counseling program, severance pay, survivor's benefit program and thrift plan.

Non–ERISA benefits, which are provided to "regular" Coca–Cola employees, include: short term disability, adoption assistance, matching gifts, tuition aid, vacation, service awards, holidays, social security benefits withholding and credit union.

*Discussion*

At this time plaintiff has the following claims remaining: 1) tortious interference with employment with defendant Coca–Cola; 2) tortious interference with employment at Access; 3) entitlement to ERISA benefits; 4) failure to provide continuing health and medical coverage under COBRA; 5) retaliatory discharge under ERISA; 6) retaliatory discharge under the FLSA; 7) breach of contract with Coca–Cola; and 8) compensation owed for non-ERISA benefits.

### 1. *Tortious interference with employment with Coca–Cola*

Plaintiff claims that defendants B. Hilburn, Johnson and Max (the "MCS defendants") tortiously interfered with plaintiff's third party benefit contract or alleged at-will employment at Coca–Cola. The MCS defendants claim they are entitled to judgment as a matter of law on this issue because: 1) plaintiff was not an intended third–party beneficiary to the Master Agreement between Access and Coca–Cola; 2) plaintiff is unable to point to evidence indicating that defendants engaged in tortious conduct; and 3) defendants' conduct was not the proximate cause of the termination of plaintiff's alleged employment with Coca–Cola.

Plaintiff responds, contending that there is ample evidence to support a claim of

tortious interference. First, plaintiff claims that the MCS defendants rescinded plaintiff's authorization to access the AS/400 computers and altered computer memory pool sizes thereby preventing plaintiff from performing her duties. Specifically, plaintiff claims that the MCS defendants, in altering computer memory pool sizes, prevented plaintiff and "other users around the United States" from locating certain fountain equipment.

Next, plaintiff claims that on one occasion, defendant Johnson placed numerous harassing telephone calls and pages to plaintiff preventing her from completing her work. Plaintiff also cites an incident involving a shortage of disc space. According to plaintiff, Riley informed plaintiff that ICS might be able to get the requested space if plaintiff's name did not appear on the memorandum.

Third, plaintiff claims that defendants other than the MCS defendants made comments to Fortune and others concerning how difficult it was to work with plaintiff. For example, plaintiff testified that Riley, plaintiff's supervisor, informed plaintiff that he could not permanently hire her because of pressure he was receiving from defendants E. Hilburn and B. Hilburn. Plaintiff also claims that she was told that certain people were "out to get her." According to plaintiff, these comments prevented plaintiff from being hired as a permanent ICS employee.

After a review of the facts, as well as the relevant authority, the court finds that defendants B. Hilburn, Johnson and Max are entitled to judgment as a matter of law on plaintiff's claim that they tortiously interfered with plaintiff's employment at Coca–Cola. In order to establish a cause of action for tortious interference with existing or prospective contractual relations, plaintiff must show that defendants: "1) acted improperly and without privilege; 2) purposely and with malice with the intent to injure; 3) induced a third party or parties not to enter into or continue a business relationship with plaintiff; and 4) for which plaintiff suffered some financial injury." *St. Mary's Hospital of Athens, Inc. v. Radiology Professional Corp.*, 205 Ga.App. 121, 124, n. 4, 421 S.E.2d 731 (1992) (citations omitted). Additionally, in order to recover, "malicious intent to cause the result must be shown." *Singleton v. Itson*, 192 Ga.App. 78, 383 S.E.2d 598 (1989) (quoting *Satsuki Imports v. W.G. Carroll & Co.*, 188 Ga.App. 350, 351, 373 S.E.2d 56 (1988)).

■ First, the court finds that the decision of the MCS defendants to restrict plaintiff's access to the AS/400 computers is insufficient to support a claim of tortious interference. It is undisputed that the decision to restrict plaintiff's access was the result of a February 1991 internal audit which revealed numerous security deficiencies in the AS/400 system and that plaintiff was not singled out. For example, in describing the impact of the MCS defendants' decision to alter the memory pool size, plaintiff herself states that she, as well as "other users around the United States," were affected.

■ Next, with regard to plaintiff's allegation that defendants prevented plaintiff from securing permanent employment by stating that plaintiff was difficult to work with, the court finds that these sort of personal opinion statements are insufficient to give rise to a claim for tortious interference. In *Singleton*, the court stated:

Divulging truthful information and expressing critical personal opinions about a co-employee's work are not wrongful or unlawful acts and those acts cannot, therefore, give rise to liability for tortious interference with contractual relations in the event that the employer makes the independent determination that truthful information and critical

opinions warrant termination of an at-will employee.

192 Ga.App. at 80.

It undisputed that plaintiff resisted the efforts of the MCS group in their efforts to secure the AS/400 computers as mandated by the February 1991 audit. As such, the court finds defendants' comments regarding plaintiff insufficient to support her claim for tortious interference.

Finally, with regard to plaintiff's other allegations, including those allegations concerning defendant Johnson, the court finds no evidence that these events were a proximate cause of defendant's decision to terminate plaintiff's relationship with Coca–Cola. *Williams v. EMRO Marketing Co.*, 229 Ga.App. 468, 494 S.E.2d 218 (1997) (citations omitted) (stating that there is no recovery in tort where plaintiff does not show "cause in fact" and "proximate cause"). Defendant Fortune, the person who made the decision to terminate plaintiff, testified that his decision was made absent coercion, influence or inducement by the MCS defendants. For these reasons, defendants' motion for summary judgement on plaintiff's claim that defendants B. Hilburn, Johnson and Max tortiously interfered with her employment with Coca–Cola [docket no. 61] is GRANTED;

### 2. *Tortious inducement with employment with Access*

Plaintiff claims that all defendants tortiously interfered with plaintiff's employment at Access. According to plaintiff, she was a third-party beneficiary of the Master Agreements and SOWs signed between Coca–Cola and Access. In addition to the conduct alleged above by the MCS defendants, plaintiff claims that defendant Fortune tortiously interfered with her employment at Access by directing Herndon, the Access representative, to terminate plaintiff.

The court finds that defendants are entitled to judgment as a matter of law on this issue. First, plaintiff is unable to point to any evidence that any of the defendants, including Fortune, instructed Access to terminate plaintiff. According to the evidence, Fortune merely informed Herndon that plaintiff's services were no longer needed at Coca–Cola.

Second, the court finds that defendant Coca–Cola is not liable to plaintiff because the decision to terminate plaintiff's relationship with Coca–Cola involved the exercise of defendant Coca–Cola's legal right under the Master Agreement. *See St. Mary's Hospital of Athens, Inc.*, 205 Ga. App. at 124–25, 421 S.E.2d 731 (indicating that a party's exercise of its right under a contract to terminate an employment relationship does not give rise to liability for tortious interference). According to the January 1, 1993 Master Agreement between Coca–Cola and Access, "[Coca–Cola] may have the right to terminate this Agreement at any time without cause upon written notice to [Access]."

For these reasons, defendants' motion for summary judgement on plaintiff's claim that defendants tortiously interfered with her employment with Access [docket no. 61] is GRANTED.

### 3. & 4. *Plaintiff's entitlement to ERISA and COBRA benefits*

Against defendant Coca–Cola, plaintiff seeks: 1) entitlement to the benefits provided by Coca–Cola to its employees under ERISA (count IV); and 2) entitlement to continuing coverage under Coca–Cola's medical and health plans pursuant to COBRA (count V). Because a finding by the court that plaintiff is not entitled to ERISA benefits is determinative regarding plaintiff's entitlement to benefits under COBRA, the following analysis applies to counts IV and V of plaintiff's complaint.

Defendant Coca–Cola moves for judgment as a matter of law on both of these

counts. First, defendant contends that regardless of plaintiff's status as an employee, Coca–Cola's benefits plans expressly exclude individuals, like plaintiff, who are considered "leased" or "temporary" employees. According to defendant, plaintiff, who should not be considered a plan "participant," lacks standing to bring her ERISA claims. *See Clark v. E.I. Dupont De Nemours & Co.*, 105 F.3d 646 (4th Cir.1997) (unpublished), indicating that in order to receive benefits under ERISA, an individual must be an employee as well as eligible to participate under the language of the plans.

Second, defendant claims that even if plaintiff was entitled to receive benefits under Coca–Cola's ERISA plans, defendant is entitled to summary judgment because plaintiff failed to plead, let alone actually exhaust, her administrative remedies. *See Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105 (11th Cir. 1997).

Plaintiff responds, contending the following. First, plaintiff contends that her status as a Coca–Cola employee entitles her to receive ERISA benefits which are provided to other regular employees. Plaintiff cites two cases, *Daughtrey v. Honeywell, Inc.* 3 F.3d 1488, (11th Cir. 1993) and *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir.1997), for the proposition that those individuals who may be classified as an employee under the common law definition of that term are, regardless of their title, eligible to participate in ERISA packages.

Second, plaintiff refutes defendant's contention that she is excluded from coverage under the plans. According to plaintiff, most of Coca–Cola's benefits plans, while specifically excluding "temporary" or "seasonal" employees, make no mention of "leased" employees. Moreover, plaintiff claims she is not a "temporary" employee as defined by those plans. According to plaintiff, most of the plans extend coverage to "regular employees," defined as an " employee ... who is not classified as a temporary employee and who is normally scheduled to work the number of hours per week and weeks per year ... standard for the [department] to which the employee is assigned, but not fewer than 17.5 hours per week." Based on this definition, plaintiff, who states that she worked well over 17.5 hours a week for six years, claims that she would never be classified as "temporary."

Finally, with regard to defendant's contention that plaintiff failed to exhaust her administrative remedies, plaintiff contends, first, that she is under no obligation to exhaust administrative remedies if her efforts would have been "futile." *See Curry v. Contract Fabricators Incorporated Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990). Plaintiff claims that she "made overtures" regarding her entitlement to benefits in the February 1994 meeting with Coca–Cola employees Bernstein and Spears shortly before she was discharged. Plaintiff's counsel states, he "raised the issue that [plaintiff] appeared to be an employee and had claims under the Fair Labor Standard Act, under ERISA." Plaintiff contends that the fact that she was discharged shortly after asserting a claim for benefits indicates that any attempt to exhaust administrative remedies would have been futile.

Next, plaintiff claims she exhausted her administrative remedies by filing a claim for benefits through defendant's counsel on December 19, 1997. Plaintiff claims that she did not receive a copy of Coca–Cola's benefits packages until October 22, 1997. Plaintiff states that because she filed a claim with defendants' counsel within sixty days of receiving the benefits materials, she exhausted her administrative remedies.

Defendant filed a reply brief contending the following. First, defendant claims that

plaintiff is not eligible to participate in Coca–Cola's benefits plans. Defendant contends that plaintiff was always regarded as a "temporary" or "leased employee."

With regard to exhaustion, defendant contends that plaintiff's reliance on *Curry* is misplaced. Defendant claims that in this case, unlike *Curry*, plaintiff never requested information about Coca–Cola's benefits plan or pursued a claim during her tenure with Coca–Cola. Defendant also cites authority suggesting that a claim for retaliatory discharge does not automatically save plaintiff from the requirement of exhaustion. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir.1996).

Next, defendant contends that plaintiff did not request benefits at the February 1994 meeting with Bernstein and Spears and at most, plaintiff's counsel indicated that plaintiff "appeared to be an employee and had claims under the Fair Labor Standards Act, under ERISA."

Finally, defendant responds to plaintiff's contention that she filed a timely request on December 22, 1997. According to defendant, this request was not timely because plaintiff was provided with copies of the relevant benefits plans on August 15, 1996. As such, her claim was made 18 months after she received the information necessary to make the claim, which is too late.

■ After a review of the facts, as well as the relevant authority, the court finds that defendant Coca–Cola is entitled to judgment as a matter of law on this issue. Specifically, the court finds that plaintiff lacks standing to bring her claims under ERISA. Under ERISA, an employer may exclude certain employees from coverage so long as the exclusion is not based on age or length of service. *See* 29 U.S.C. § 1052(a); *see also Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir.1996). In this case, Coca–Cola's ERISA plans apply only to employees who are considered "regular" employees. Thus, even if a jury were to find that plaintiff was an "employee" based on traditional agency principles, *see Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir.1993), defendant Coca–Cola would still be entitled to judgment as a matter of law because plaintiff is not a "participant" in or a "beneficiary" of Coca–Cola's ERISA benefits plans. *See Clark*, 105 F.3d at 646 (finding no subject matter jurisdiction where plaintiff was not eligible to receive benefits under the language of the plan and was thus not a "participant" under ERISA).

The court finds that plaintiff is specifically excluded from participating in defendant's ERISA benefits plans. Most of defendant's plans exclude "temporary" or "seasonal" employees and all of defendant's plans apply only to "regular" employees. "Regular" employees are those employees "not classified as temporary employee[s] and who [are] normally scheduled to work the number of hours per week and weeks per year ... standard for the [department] to which the employee is assigned, but not fewer than 17.5 hours per week." According to the record, plaintiff was never treated as a "regular" employee by Coca–Cola: she wore a different colored badge than regular Coca–Cola employees, she received her paychecks directly from Access, requested pay raises through Access and she was not invited to various events intended for Coca–Cola employees, such as Christmas parties. Plaintiff herself admits that she did not consider herself a Coca–Cola employee.

The court finds that plaintiff is not a "participant" under ERISA because she was not eligible to participate in defendant's ERISA plans. Regardless of whether plaintiff would be able to establish that she was an employee under common law agency principles, the court finds that defendant is entitled to judgment as a matter of law on the issue of plaintiff's

entitlement to ERISA and COBRA benefits because defendant has established that plaintiff was not eligible to participate in defendant's benefits plans under the express language of those plans. Accordingly, defendant's motion for summary judgment [docket no. 61–1] is granted on the issue of plaintiff's entitlement to ERISA and COBRA benefits.

### 5. Retaliatory discharge under ERISA

Plaintiff claims that defendant's termination of plaintiff's services constituted retaliation for plaintiff's request for coverage under Coca–Cola's various pension and welfare benefits plans in violation of ERISA, 29 U.S.C. § 1140.

Defendant claims it is entitled to judgment as a matter of law on this issue because: 1) plaintiff was not a "participant" under Coca–Cola's benefits plans; 2) there is no admissible evidence that plaintiff engaged in protected activity; that is, no evidence that plaintiff made a claim for ERISA benefits prior to the termination of her services; and 3) the decision to terminate plaintiff was made independent of any alleged protected activity.

Plaintiff responds, contending that she has established a prima facie case for retaliation under ERISA. First, plaintiff contends she is entitled to protection under 29 U.S.C. § 1140 because she has created a genuine issue of material fact regarding whether she was a Coca–Cola employee eligible for benefits at the time of her discharge.

Next, plaintiff contends a genuine issue of material fact exists regarding whether or not plaintiff engaged in protected activity under ERISA. According to plaintiff, plaintiff's counsel Stanford asserted a claim for benefits on plaintiff's behalf during the February 24, 1994 meeting with Coca–Cola employees Bernstein and Spears. Additionally, plaintiff claims that

Stanford's testimony on this point is admissible for the purposes of summary judgment. *See Culebras Enterprises Corp. v. Rivera,* 846 F.2d 94 (1st Cir.1988).

Finally, plaintiff points to evidence she claims indicates discriminatory intent on the part of Coca–Cola. First, plaintiff notes that only eleven days passed between the time she allegedly asserted her claim for benefits to Bernstein and Spears and her termination. Second, plaintiff points to the deposition testimony of Ben Hilburn. Ben Hilburn and his wife, Eileen, are both Coca–Cola employees. Eileen Hilburn supervises Joe Fortune, the individual who made the decision to terminate plaintiff. According to Ben Hilburn, shortly after plaintiff's termination, he and his wife had a conversation about plaintiff. Ben Hilburn testified in his deposition, "Well, she thought—thought that there were some overtime claims or some such thing, but she didn't really know." Plaintiff claims this evidence creates a genuine issue of material fact as to defendant's motives.

▮ After a review of the facts, as well as the relevant authority, the court finds that defendant is entitled to judgment as a matter of law on this issue. Section 510 of ERISA, 29 U.S.C. § 1140 makes it unlawful

> to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

In order to prove a prima facie of unlawful discharge under section 510, plaintiff must show that she: 1) is entitled to ERISA's protection; 2) was qualified for the position; and 3) was discharged under circumstances that give rise to an inference of discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217 (11th Cir.1993) (*citing*

*Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990)). Moreover, to satisfy the last element, "plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor." *Id.* (citation omitted).

First, the court finds the evidence is insufficient to prove that plaintiff participated in protected activity prior to her termination. It is undisputed that prior to her termination, plaintiff never applied for benefits, sought copies of benefits materials or even mentioned the possibility of receiving benefits to her supervisors. According to the record, there is only one instance where plaintiff may have raised a claim for benefits prior to her termination. On February 28, 1994, plaintiff and her counsel Stanford met with Coca–Cola employees Bernstein and Spears. At that meeting, plaintiff's counsel later testified that he stated that plaintiff "appeared" to be an employee with a benefits claim. However, plaintiff's counsel does not recall who raised the benefits issue or what any of the individuals said. Indeed, none of the individuals present at the meeting recalled that claim having been made. The court finds that this evidence is insufficient to create a genuine issue of material fact regarding whether plaintiff participated in protected activity. *See Anderson*, 477 U.S. at 249–250, 106 S.Ct. 2505 (finding that an issue is not genuine if it is supported only by evidence that is "merely colorable" or is not "significantly probative").

Second, the court finds the only evidence in the record indicates that the decision to terminate plaintiff was based on legitimate reasons. According to Fortune, the Coca–Cola employee who made the decision to terminate plaintiff, the sole reason he decided to terminate plaintiff was based on her outrageous accusations that defendants were involved in a conspiracy to sabotage plaintiff. Additionally, the court finds Ben Hilburn's deposition testimony regarding a discussion he had with his wife, Eileen Hilburn, concerning plaintiff's termination is insufficient to create a genuine issue of material fact. Ben Hilburn testified in his deposition, "Well, she thought—thought that there were some overtime claims or some such thing, but she didn't really know." This court finds that this evidence does not constitute the type of "colorable" evidence required to create a genuine issue of material fact with regard to defendant's motives.

### 6. *Retaliation under FLSA*

Plaintiff claims that she was terminated because she made a claim for overtime in violation of the Fair Labor Standards Act, section 15(a)(3), 29 U.S.C. § 215(a)(3). Defendant Coca–Cola claims it is entitled to judgment as a matter of law on this issue because: 1) there is no admissible evidence that plaintiff made a claim under FLSA prior to her termination; and 2) the evidence shows she was terminated solely because of her accusations concerning conspiracy. In response to defendant's motion for summary judgment on this claim, plaintiff points to the evidence which she claims shows that defendant unlawfully discharged her in violation of ERISA.

Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for an employer to:

> discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . .

For the reasons stated above with regard to plaintiff's claim for retaliation under ERISA, the court finds that defendant Coca–Cola is entitled to judgment as a matter of law on plaintiff's claim that her termination was unlawful under the FLSA.

Defendant's motion for summary judgment [docket no. 61–1] is GRANTED with regard to plaintiff's retaliation claim under the FLSA.

### 7. Breach of contract with Coca–Cola

Plaintiff claims that in terminating her, defendant Coca–Cola breached an alleged employment contract between plaintiff and Coca–Cola or breached an agreement between Access and Coca–Cola to which plaintiff was an intended third-party beneficiary.

Defendant claims it is entitled to judgment as a matter of law on this issue because: 1) plaintiff's own testimony establishes that she did not have an employment contract with Coca–Cola; 2) plaintiff was not an intended third-party beneficiary of the Master Agreements between Coca–Cola and Access; and 3) even if plaintiff was an intended third-party beneficiary of the Master Agreements, Coca–Cola's actions did not constitute a breach.

Plaintiff responds, contending that she was an intended beneficiary of the Master Agreements executed between Access and Coca–Cola, as well as the accompanying SOWs, specifically covering plaintiff. For example, Access and Coca–Cola entered into a 1994 Master Agreement running from January 1994 until December 31, 1994. However, according to plaintiff, after she was terminated in March 1994, Coca–Cola executed two new SOWs expressly referencing plaintiff's work. One of the SOWs was for 1994 and covered January 1, 1994 to July 31, 1994. The other SOW was for 1993 and covered January 1, 1993 until December 31, 1993. According to plaintiff, she was terminated without notice or without compensation through December 31, 1994 as indicated by the 1994 Master Agreement.

 According to the record, as well as the relevant authority, the court finds that defendant is entitled to judgment as a matter of law on this issue. The court finds that plaintiff was not an intended third-party beneficiary of any agreements between Access and Coca–Cola. A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person. *Stewart v. Gainesville Glass Co.,* 131 Ga.App. 747, 752, 206 S.E.2d 857 (1974), *aff'd,* 233 Ga. 578, 212 S.E.2d 377 (1975) (citation omitted). In order that a third-party has standing to enforce a contract, "it must clearly appear from the contract that it was *intended* for his or her benefit." *Gardner & White Consulting Servs., Inc. v. Ray,* 222 Ga.App. 464, 474 S.E.2d 663, *cert. denied,* (November 8, 1996) (citation omitted) (emphasis in original). Additionally, "[t]he mere fact that the third-party would benefit from performance of the agreement is not alone sufficient." *Id.* Finally, both parties to the contract must have intended that the third person should be the beneficiary. *Donalson v. Coca–Cola Co.,* 164 Ga.App. 712, 713, 298 S.E.2d 25 (1982) (citations omitted).

During plaintiff's tenure at Coca–Cola, Access and Coca–Cola entered into annual Master Agreements for Consulting Services. Pursuant to these Agreements, Access promised to provide professional services as Coca–Cola may "authorize, from time to time, by the execution of [SOWs] ..." However, none of the Master Agreements reference plaintiff. Additionally, although plaintiff is referenced in a SOW covering January 1, 1993, that SOW expires December 13, 1993. At the time of her termination in March 1994, there was no agreement which specifically referenced plaintiff. The court finds that based on these facts, it is clear that plaintiff was not an intended third-party beneficiary of any agreements between Access and Coca–Cola.

Second, the court finds that defendant Coca–Cola may not be held liable against plaintiff for breach of contract. Even if

plaintiff was an intended beneficiary of the agreements between Access and Coca-Cola, her rights depend on the terms of those agreements and are no greater than those rights granted under the agreements. *See Deal v. Chemical Constr. Co.,* 99 Ga.App. 413, 108 S.E.2d 746 (1959). Under the express terms of the Master Agreements, Coca-Cola had the right to terminate the Agreement "at any time without cause." Thus, the court finds that Coca-Cola's actions, in deciding to terminate plaintiff, do not amount to a breach of contract.

Accordingly, defendant's motion for summary judgment [docket no. 61–1] is GRANTED with regard to plaintiff's breach of contract claim.

### 8. *Entitlement to non-ERISA benefits*

Plaintiff claims that as a Coca-Cola employee, she is entitled to receive non-ERISA benefits, such as vacations, holidays and adoption assistance. Plaintiff seeks monetary compensation for these benefits.

First, for the reasons stated above with regard to plaintiff's ERISA and COBRA claims, the court finds that because plaintiff is not a "regular" employee, she is not entitled to receive these benefits.

Second, plaintiff points to no evidence indicating that she and defendant Coca-Cola contracted regarding these benefits. Plaintiff is unable to cite, and this court is unable to find, any law which requires employers to offer its employees non-ERISA benefits such as those outlined by plaintiff. At least one court has applied Georgia contract law in determining whether a plaintiff was entitled to receive such benefits. *Williams v. Wright,* 783 F.Supp. 1392 (S.D.Ga.1992). Here, it is undisputed that Coca-Cola's non-ERISA benefits were never offered to plaintiff by defendant. As such, the parties did not form a valid contract regarding these benefits. *See* O.C.G.A. § 13–3–1 ("For there to be a valid contract, there must be a subject matter, a consideration, and mutual assent by all parties to all terms.")

For these reasons, the court finds that defendant is entitled to judgment as a matter of law on the issue of whether plaintiff is entitled to the non-ERISA benefits offered by Coca-Cola to "regular employees."

Defendant's motion for summary judgment [docket no. 61–1] is GRANTED.

### SUMMARY

The court DENIES plaintiff's motion for conditional stay [docket no. 64–1]. The court GRANTS defendants' motion for summary judgment [docket no. 61–1].