A89A1054. STEIN v. TRI-CITY HOSPITAL AUTHORITY.
(384 SE2d 430)

DEEN, Presiding Judge.

At its regular meeting on June 27, 1984, the Board of Trustees of the Tri-City Hospital Authority, d/b/a South Fulton Hospital (hereinafter referred to as the hospital authority or the hospital) unanimously passed the following resolution: "RESOLVED that all Medical/Dental staff at South Fulton Hospital will be required to have $1 million malpractice insurance by August 1, 1985. Staff will be required to provide proof of coverage at appointment or reappointment. Those members of the staff whose reappointment is beyond the August 1, 1985[,] deadline will be required to provide proof of appropriate coverage before that date." In accordance therewith, the Board of Trustees also amended the bylaws of the hospital authority to reflect the malpractice insurance requirement of its staff appointments.

The primary reasons discussed and considered by the Board of

Trustees in deciding to adopt this policy were to protect patients of the hospital from the financial insolvency of a negligent physician; to provide a fund from which patients who were injured by malpractice could recover; to save the hospital money on its own coverage and thereby enable it to maintain a lower cost for care to patients and hospital treatment; to protect other staff physicians and the hospital against liability for the malpractice of an uninsured physician on staff; and to assure that if the hospital were joined in a lawsuit against a staff physician, the physician would be able to contribute to the cost of the defense. The Board also took into account that such a requirement is one of the factors considered by the hospital accreditation commission, and that such a plan was recommended in an independent study undertaken by the hospital as a development and planning strategy. It further determined that since most physicians already had such malpractice coverage or would have little difficulty in obtaining it, the requirement would not add significantly to the qualification process necessary for staff privileges.

Dr. Ignatius J. Stein first became a member of the hospital staff in 1967, and his privileges were periodically renewed thereafter. Some limitations were placed on his privileges in 1975 and 1976, and his breast surgery privileges were suspended in 1979 pending an investigation arising out of a number of complaints and eleven malpractice actions brought against him. Some of Dr. Stein's privileges were reinstated in 1980 with certain conditions, but upon recommendation of the hospital's executive committee no breast surgery privilege was allowed. On December 28, 1982, the hospital received a subpoena from the Composite State Board of Medical Examiners for production of the medical records of fourteen different patients treated at the hospital by Dr. Stein. On February 10, 1984, the hospital was notified that pursuant to a consent order of the Composite State Board, Dr. Stein's medical license was being placed on four-year probation.

Dr. Stein was serving as a staff physician with these limitations at the time the malpractice insurance requirements were enacted, and was duly notified thereof. A letter specifically requesting information concerning his insurance coverage was sent to him on April 4, 1985, and, when no reply was received, again on July 9, 1985. On July 22, 1985, Dr. Stein informed the hospital that his application for the required coverage was pending and requested a 90-day extension of his privileges to "pursue and exhaust all sources of malpractice insurance available." At its meeting of July 24, 1985, the hospital authority determined that Dr. Stein and one other staff physician had not provided evidence of medical liability insurance coverage as required by the bylaws. Dr. Stein was advised that unless he presented such proof his privileges would expire on July 31, 1985, but after that, upon provision of the requisite evidence, he could request reinstatement and

"be processed as an expedited original application, including a request for temporary privileges. . . ." Dr. Stein and one other physician failed to provide any malpractice insurance evidence and were removed from the hospital staff on August 1, 1985. Dr. Stein's hospital privileges had previously been terminated or denied because of a lack of medical malpractice insurance at three other area hospitals, all of which had adopted the requirement before the appellee hospital did.

On August 21, 1985, Dr. Stein applied to the hospital for privileges as a physician's assistant and was informed that he was ineligible for such a position as he was a doctor of medicine. By letter of January 6, 1986, Dr. Stein requested to appear before the hospital authority. An appearance was denied but he was told he could reapply for privileges once he met the bylaws requirements. A subsequent application for medical privileges submitted on February 25, 1986, without proof of any malpractice insurance coverage, was denied pending receipt of such evidence. Dr. Stein then filed suit against the hospital's insurance carrier in federal district court, alleging a claim under the Sherman Act including unlawful restraint of trade, monopoly and boycott, and intentional interference with contract. After this complaint was dismissed in part for failure to state a claim, Dr. Stein dismissed the suit without prejudice and filed the instant action in the State Court of Fulton County against the hospital and its insurance carrier. The insurer was dismissed and both parties moved for summary judgment. The trial court granted the hospital's motion and denied Dr. Stein's, and he appeals.

Dr. Stein advances several theories which he contends mandate reversal, arguing that the hospital "violated the dictates of OCGA § 31-7-7 (a) when it delegated to its insurance company the power to determine whether he could practice medicine [as a member of] its staff; that the insurance requirement was an improper and unlawful delegation of the hospital's duties to determine his fitness to practice medicine; that the hospital breached its contract with him when it eliminated his privileges with one year remaining in his agreed-upon term; and that the hospital violated his right of due process when it arbitrarily terminated his staff privileges. We conclude that none of these positions is tenable, however, as the hospital had every legal right to take the action it did.

Even assuming that the hospital's insurance company was the instigator of a nationwide policy requiring staff members of its insured hospitals to secure individual malpractice insurance, as appellant argues, there is simply no evidence of record showing that the appellee hospital illegally delegated any of the supervisory authority granted it by OCGA § 31-7-7 (a) to refuse or revoke staff privileges. Rather, this was a rational and thoroughly debated decision unanimously made by

the hospital's Board of Trustees, with no apparent input or pressure from the insurance company, that the insurance requirement was reasonable and necessary. "In our opinion, the challenged resolution is an administrative policy adopted by the Hospital Authority pursuant to the power vested in them by the legislature under [OCGA § 31-7-7] et seq., in furtherance of the administration, operation, maintenance and control of the hospital and, accordingly, the function of this court is limited to a determination of whether the Hospital Authority's action in adopting the resolution was arbitrary and unreasonable. [Cits.] In deciding this question we may not substitute our judgment for that of the Hospital Authority on matters . . . which are purely administrative rather than legal in nature." *Cobb County-Kennestone Hosp. Auth. v. Prince*, 242 Ga. 139, 146 (1) (249 SE2d 581) (1978).

A physician does not have "absolute authority" to practice medicine in this state and a hospital authority may restrict a staff member's privileges by reasonable and non-discriminatory rules and regulations. *Dunbar v. Hosp. Auth. of Gwinnett County*, 227 Ga. 534 (1) (182 SE2d 89) (1971). " ' "A statute regulating the right to practice medicine, *but leaving the field open to all who possess the prescribed qualifications*, does not abridge the privileges or immunities of citizens." [Cit.]' [Cits.]" (Emphasis supplied.) *Yeargin v. Hamilton Mem. Hosp.*, 225 Ga. 661, 666 (171 SE2d 136) (1969); (U. S. cert. den., 397 U. S. 963). Moreover, every doctor receiving staff privileges at the hospital did so with the understanding that his appointment was subject to its bylaws.

While the reasonableness of the malpractice insurance requirement has not previously been called in question in this state, it appears in every jurisdiction which has considered such an appeal that these measures to protect the hospital and the patients it serves have been determined not to be unlawful, arbitrary, or capricious. See *Holmes v. Hoemako Hosp.*, 573 P2d 477 (Ariz. 1977); Annot., 7 ALR 4th 1231 (1981). We see no good reason to oppose this trend. "Part of the responsibilities of a hospital authority is to insure that an adequate, competent medical staff serves the patients within the hospital. 'It is generally agreed that the managing authorities of a hospital, under the power to adopt reasonable rules and regulations for the government and operation thereof, may, in the absence of any statutory restriction prescribe the qualifications of physicians or surgeons for admission to practice therein.' [Cits.] It naturally follows that a hospital authority has the power to revoke the staff privileges of a physician whom [it] finds to be incompetent *or who fails to comply with the reasonable rules and regulations as promulgated by the Authority*. [Cit.]" (Emphasis supplied.) *Cobb County-Kennestone Hosp. Auth. v. Prince*, supra at 144. Accord *Todd v. Physicians & Surgeons Community Hosp.*, 165 Ga. App. 656 (302 SE2d 378) (1983).

Since Dr. Stein accepted his privileges subject to the hospital authority's bylaws, as properly amended, no "expectation" or "bargain" on his part has been abrogated by its actions. "The mere fact that [Dr. Stein] would benefit from performance of an agreement with reference to treatment at the hospital of the patients is insufficient to give [him] any rights or to create or make [him a contracting party] with enforceable rights. [Cits.]" *Todd*, supra at 663. For Dr. Stein "to have a constitutionally protected property interest here, which would then require prior to its deprivation the procedural due process of a duly constituted hearing, he must have a 'legitimate claim of entitlement,' supported by contract or state law. [Cits.] State law does not afford Dr. [Stein] such a property interest. . . . Nor did the contract give rise to a protected property interest." *Alonso v. Hosp. Auth. of Henry County*, 175 Ga. App. 198, 202 (6) (332 SE2d 884) (1985). For these reasons, the trial court correctly granted summary judgment in favor of the hospital and against Dr. Stein.

*Judgment affirmed. Birdsong and Benham, JJ., concur.*

DECIDED JULY 5, 1989 —
REHEARING DENIED JULY 13, 1989 — 

*Walbert & Hermann, David F. Walbert, David H. Bedingfield,* for appellant.

*Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Jr., Hart & Sullivan, Lawrie E. Demorest, R. Jerry Kirkpatrick,* for appellee.