A92A0237. ST. MARY'S HOSPITAL OF ATHENS, INC. v. RADIOLOGY PROFESSIONAL CORPORATION et al.
(421 SE2d 731)

SOGNIER, Chief Judge.
St. Mary's Hospital of Athens, Inc. ("St. Mary's") brought a de-

claratory judgment action against Radiology Professional Corporation ("RPC") and its principal, Dr. Larry Cohen, to establish St. Mary's' rights under its contract with RPC to terminate the contract and withdraw Cohen's hospital staff privileges. RPC and Cohen filed counterclaims asserting causes of action for tortious interference with existing and prospective contractual relationships, intentional infliction of emotional distress, deprivation of due process rights, and abusive litigation. St. Mary's' motion for summary judgment on all counterclaims except the abusive litigation count was denied, and we granted its application for interlocutory appeal.

St. Mary's is a private, nonprofit hospital organized pursuant to regulations promulgated by the Department of Human Resources (DHR). St. Mary's granted hospital staff privileges to Cohen in the late 1960s. In 1971, he incorporated RPC, which then entered into a contract with St. Mary's as the exclusive provider of radiological services for the hospital. The contract obligated RPC to provide radiological services through its employee physicians and required St. Mary's to furnish equipment and non-professional personnel. The contract also stated that either party could terminate the contract without cause upon giving the requisite notice to the other party. Cohen's relationship with St. Mary's also was governed by the hospital staff bylaws promulgated pursuant to DHR Reg. § 290-5-6.-01 (7), which provided, inter alia, for notice and a hearing before termination of staff privileges and for appellate review thereafter. The one-year term of the contract between St. Mary's and RPC was extended each year pursuant to the contract's automatic renewal clause. Beginning in 1981, the letter sent to Cohen each year concerning renewal of his staff privileges stated that his privileges would be revoked should RPC's contract be terminated (although Cohen denies that he agreed to this limitation).

The voluminous record in this case reveals that in the mid-1980s, St. Mary's and RPC, through Cohen, became enmeshed in a series of disputes concerning Cohen's management practices, the range and quality of equipment provided by St. Mary's, and the scope of duties to be performed exclusively by RPC. As a result of these ongoing conflicts, St. Mary's sought to renegotiate its contract with RPC. These efforts proved unsuccessful, and in January 1989 St. Mary's filed this action to determine its rights under the contract to terminate RPC and withdraw Cohen's privileges so that it could enter into an exclusive relationship with another radiology group. RPC continued its role as the provider of radiological services, but in the summer of 1990 it lost several physician employees and ultimately informed St. Mary's that it could not provide the level of service required. St. Mary's then notified RPC that its contract would be terminated and Cohen's privileges would be revoked.

1. We agree with St. Mary's that summary judgment improperly was denied on Cohen's claim for intentional infliction of emotional distress. This tort arises only when "the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass, or frighten the plaintiff. [Such c]laims . . . have been upheld by this court when the threats on which those claims were based were outrageous and egregious." (Citations and punctuation omitted.) *Gordon v. Frost*, 193 Ga. App. 517, 521 (388 SE2d 362) (1989). See *Georgia Farm &c. Ins. Co. v. Mathis*, 197 Ga. App. 324, 325 (398 SE2d 387) (1990). "[I]t is not enough that [the defendant's] conduct in a given situation is intentional or that it is willful and wanton. In order to warrant recovery . . . the conduct also must be of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness. [Cits.]" *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988).

Cohen bases his claim on four occurrences: (1) the imposition of allegedly unreasonable conditions on RPC's employees; (2) an attempt by St. Mary's to solicit a large contribution from him during a hospital fund-raising campaign that occurred while contract negotiations were occurring between RPC and St. Mary's, which Cohen considered as a "shakedown" of him; (3) the alleged statement of a hospital administrator that St. Mary's did not have to treat Cohen fairly and would force him out; and (4) derogatory references allegedly made by representatives of St. Mary's during contract negotiations. Construing this evidence in favor of Cohen as respondent on motion for summary judgment, we nonetheless agree with St. Mary's that this conduct failed utterly to rise to the requisite level of outrageousness and egregiousness. Hospital administrators have broad authority to make decisions and implement policies concerning the administration, operation, maintenance, and control of the hospital and the management and treatment of patients. *Cobb County-Kennestone Hosp. Auth. v. Prince*, 242 Ga. 139, 144-147 (249 SE2d 581) (1978). Disputes between the hospital and its physicians over the exercise of this authority inevitably will arise. Such conflicts, however, do not give rise to a cause of action for intentional infliction of emotional distress, but instead constitute power, control, and management issues to be resolved between the parties rather than in a court of law. Accord *Kornegay v. Mundy*, 190 Ga. App. 433, 435 (1) (379 SE2d 14) (1989). In addition, the alleged insulting and derogatory references cited by Cohen also are not actionable, for "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and

to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." (Emphasis omitted.) *Moses*, supra at 225. See *Kornegay*, supra at 434-435. Accordingly, we hold that the trial court erred by denying St. Mary's' motion for summary judgment on this claim.

2. To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show "that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury. . . . [T]he liability results not only from disruption of the relationship but also from elimination of the injured party's ability to perform. . . . [T]he term 'malicious' or 'maliciously' means any unauthorized interference or any interference without justification or excuse." (Citations and punctuation omitted.) *Perry & Co. v. New South Ins. Brokers*, 182 Ga. App. 84, 89-90 (354 SE2d 852) (1987). This court has authorized the grant of summary judgment to a defendant on a tortious interference claim if the defendant pierces the pleadings with respect to any single element of the cause of action. See *Jenkins v. Gen. Hosp. of Humana*, 196 Ga. App. 150-151 (395 SE2d 396) (1990).

Appellees base their claim upon acts of St. Mary's that they assert caused radiologists in RPC's employ to leave their positions and substantially impaired RPC's ability to recruit new physicians. Appellees have detailed numerous incidents arising out of disagreements between St. Mary's and RPC, through Cohen, concerning the purchase and management of equipment, the imposition of allegedly unjustifiable administrative and procedural requirements on RPC's physicians, and the allocation of professional responsibilities among the various medical specialists staffing the hospital. The record also includes testimony from Cohen and a professional staff recruiter engaged by RPC concerning the difficulties they encountered in recruiting radiologists to join RPC as a result of the allegedly unreasonable and disruptive conduct of St. Mary's.

We conclude that these allegations, even if proven at trial, would not establish a claim for tortious interference as a matter of law because they do not establish the essential element of inducement of adverse actions by third parties. Each alleged wrongful incident arose out of performance of the contractual relationship between St. Mary's and RPC, not as a result of any inducement directed toward RPC's employee physicians or recruits. Appellees do not allege that St. Mary's induced radiologists not to enter into or continue their contracts with RPC. Instead, appellees claim that the unreasonable per-

formance by St. Mary's of its contracts with appellees caused such a result. While such acts might provide a basis for a breach of contract claim (and we offer no opinion on the merits of such a claim), they cannot provide the basis for a claim of intentional interference with RPC's contractual relationship with others. Appellees correctly assert that a claim for tortious interference is not limited to conduct that causes a breach of a claimant's contract with a third party, but also may be asserted for conduct that makes the performance of that contract more difficult. See *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 774-775 (2) (399 SE2d 529) (1990). However, in such a circumstance the claimant still must prove that the defendant directly induced adverse behavior by the third party with respect to the third party's contract with the claimant, not merely that the defendant breached *its* contract with the claimant and that an element of damage resulting from that breach was the impairment of the claimant's performance of its contract with the third party. See id.; see also *Perry & Co.*, supra. Accordingly, St. Mary's was entitled to summary judgment on this claim.

3. The final count on which St. Mary's sought summary judgment was Cohen's claim for "tortious denial of due process rights contractually guaranteed to [Cohen]." St. Mary's contends that this allegation must be construed as a claim for tortious deprivation of due process rights, a cause of action St. Mary's maintains is not recognized in Georgia. Applying the well-established principle that the pleadings must be construed in favor of Cohen as respondent on motion for summary judgment, *City of Rome v. Turk*, 235 Ga. 223, 225 (219 SE2d 97) (1975), we find that the allegation at issue can be read to assert three possible causes of action: (a) deprivation of liberty or property rights without due process of law; (b) breach of a contractual obligation to comply with the bylaws; or (c) violation of a legal duty, arising independently of the contract, to comply with the bylaws.

(a) The due process clauses of the United States and Georgia Constitutions control the actions of governments, not those of private individuals. *Reinertsen v. Porter*, 242 Ga. 624, 627 (250 SE2d 475) (1978). Since St. Mary's is a private hospital, a due process claim may be maintained against it only if there existed such a nexus between the State and the termination by St. Mary's of Cohen's staff privileges that this action of St. Mary's may be considered an act of the State itself. *Jackson v. Metro. Edison Co.*, 419 U. S. 345, 351 (95 SC 449, 42 LE2d 477) (1974); *Reinertsen*, supra. State regulation of the hospital industry, even if "extensive and detailed," does not give rise to the requisite connection. *Jackson*, supra at 350-351; see *Ray v. Bank of Covington*, 247 Ga. 758 (1) (279 SE2d 425) (1981). Nor is the fact that the administration of hospitals may be characterized as a business affected with a public interest sufficient to create the neces-

sary nexus. *Jackson,* supra at 353-354. Although state law required the implementation of medical staff bylaws, no state entity or official participated in the challenged action, see id. at 357-358, and the DHR regulations at issue did not compel St. Mary's to terminate Cohen's staff privileges. See *Evans v. Harley Hotels,* 253 Ga. 53 (315 SE2d 896) (1984). Therefore, to the extent that this count of the counterclaim asserted a due process claim, no state action exists as a foundation for such a claim, and thus St. Mary's was entitled to summary judgment on that claim. See *Todd v. Physicians &c. Hosp.,* 165 Ga. App. 656, 662-663 (302 SE2d 378) (1983).

(b) To the extent that Cohen's counterclaim asserts a claim for breach of contract for noncompliance with the bylaws, we agree with St. Mary's that it is entitled to summary judgment on that claim. Our courts have held that because hospitals have the authority to establish and revise rules and regulations governing the appointment of physicians to the hospital staff, medical staff bylaws alone do not create any contractual right to continuation of staff privileges. *Stein v. Tri-City Hosp.,* 192 Ga. App. 289, 292-293 (384 SE2d 430) (1989); *Todd,* supra. Indeed, hospitals are entitled to change the staff bylaws or the terms of appointment even if that act results in the termination of a physician's staff privileges. *Stein,* supra; see *Alonso v. Hosp. Auth. of Henry County,* 175 Ga. App. 198, 202-203 (6) (332 SE2d 884) (1985). Given that the bylaws themselves confer no contractual rights, we conclude that no cause of action lies against a hospital ex contractu based solely on an alleged breach of bylaw provisions.

Further, there is no evidence that Cohen and St. Mary's had a written contract that expressly incorporated the staff bylaws or otherwise contractually provided that Cohen's privileges could be terminated only in accordance with the procedures set forth in the bylaws. See *Alonso,* supra; compare *Northeast Ga. Radiological Assoc. v. Tidwell,* 670 F2d 507, 510-511 (5th Cir. 1982). Accordingly, Cohen cannot assert a claim for breach of contract by failure to comply with the bylaws.

(c) OCGA § 51-1-6 provides that "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Pursuant to this statute, a cause of action will lie for breach of a duty arising under a statute or common law. See *Sutter v. Hutchings,* 254 Ga. 194, 197 (327 SE2d 716) (1985); *Diedrich v. Miller & Meier & Assoc.,* 254 Ga. 734, 736-737 (2) (334 SE2d 308) (1985). Thus, if the termination of Cohen's staff privileges without complying with the provisions of the staff bylaws concerning notice and a hearing constituted a violation of a legal duty owed by St. Mary's to Cohen, a cause of action will lie for

the breach of that duty.

With regard to public hospitals, the Supreme Court has recognized that although a physician has no absolute right to practice in a given public hospital, only a privilege, the physician is entitled to practice in the public hospitals as long as he complies with applicable laws, rules, and regulations, and such privileges may not be deprived by rules or acts that are unreasonable, arbitrary, capricious, or discriminatory. *Dunbar v. Gwinnett Hosp. Auth.*, 227 Ga. 534, 540-541 (1) (182 SE2d 89) (1971). Given that hospitals cannot arbitrarily or capriciously deprive physicians of their privileges, the logical inference from this principle is that notwithstanding the broad power of a hospital authority to control the administrative, operational, and managerial functions of the facility and its staff, see *Cobb County-Kennestone*, supra, a public hospital authority cannot abridge or refuse to follow its existing bylaws concerning staff privileges. While the hospital has broad authority to *change* the bylaws, *Stein*, supra, it cannot refuse to follow *existing* bylaws. Consequently, given that a legal duty exists as to public hospitals, the violation of that duty is actionable under OCGA § 51-1-6.

Does the same duty devolve upon private hospitals? We hold that it does. Otherwise, the regulatory mandate that all hospital authorities enact staff bylaws would be meaningless. Since the issue is existence of a legal duty to follow procedures established pursuant to state law, not the presence of state action, we see no reason to distinguish between public and private hospitals in this context. Both are required to establish staff bylaws; therefore, both should be required to follow those bylaws. Just as a physician who receives privileges at a hospital "[does] so with the understanding that his appointment [is] subject to its bylaws," *Stein*, supra at 292, a hospital, whether public or private, also should be subject to the bylaws it enacts. Accordingly, we hold that Cohen may assert a cause of action in tort against St. Mary's for failure to follow existing bylaws with regard to termination of his staff privileges.

We do not find, however, that St. Mary's is entitled to summary judgment on this tort claim. We agree with St. Mary's that it has the authority to establish exclusive relationships with physicians in a given specialty or area of practice and that such authority may include the concomitant right to terminate staff privileges as necessary to maintain this exclusivity. Nonetheless, this termination right may not be exercised in a manner inconsistent with the staff bylaws. Consequently, to ensure its right to terminate staff privileges to maintain exclusive relationships, hospitals must so provide either in the bylaws or in a contract with the *individual* physician (and not just in the contracts with the physician's professional corporation). In this case neither of these steps was followed. However, there is a fact question

whether Cohen acquiesced in the limitations St. Mary's placed upon the renewal of his privileges so as to waive his right to insist on compliance with the procedural requirements in the bylaws. Thus, the trial court did not err by denying summary judgment to St. Mary's.

*Judgment affirmed in part and reversed in part. Cooper, J., concurs. McMurray, P. J., concurs in Divisions 1 and 3 and concurs in the judgment only in Division 2.*

DECIDED JULY 8, 1992 —
RECONSIDERATION DENIED JULY 23, 1992 — 

*Blasingame, Burch, Garrard & Bryant, J. Ralph Beaird, Lesley A. Troope, Milton F. Eisenberg II, McLeod, Benton, Begnaud & Marshall, Larry McLeod, Andrew Marshall, Lyndon & Gilley, John F. Lyndon,* for appellant.

*Henry & Pearson, J. Hue Henry,* for appellees.

*Alston & Bird, Kevin E. Grady, Jack Spalding Schroeder, Jr., Henner & Block, Barry Sullivan,* amici curiae.