[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2010
JOHN LEY
CLERK

No. 09-10917

_____

D. C. Docket No. 08-00049-CV-WSD-1

OMAR F. JIMENEZ,

Plaintiff-Appellant,

versus

WELLSTAR HEALTH SYSTEM,
WELLSTAR KENNESTONE HOSPITAL,
WELLSTAR WINDY HILL HOSPITAL,
WELLSTAR COBB HOSPITAL,
DR. DANIEL MOORE, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 18, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

BLACK, Circuit Judge:

This case involves the allegedly discriminatory suspension of a physician's medical staff privileges. Medical staff privileges allow a physician both to treat patients at the privilege-granting hospital and to receive patient referrals from that hospital. Appellees—physicians, administrators, and hospitals associated with WellStar Health System (WellStar)—suspended the medical staff privileges of Appellant, Dr. Omar F. Jimenez, an African-American physician with a specialty in neurosurgery. Jimenez believed the suspension was racially motivated and brought claims against the Appellees, individually and collectively, under state and federal law. The district court dismissed the federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and declined to exercise supplemental jurisdiction over the remaining state law claims. The questions before this Court are whether Jimenez's allegations are sufficient to establish claims under 42 U.S.C. § 1981 for discrimination or retaliation, or under 42 U.S.C. § 1985(3) for conspiracy to interfere with his rights on the basis of race.

## I. BACKGROUND

On January 10, 2006, WellStar Surgery Department's Medical Care Evaluation Committee required Jimenez to appear before it to address numerous complaints the Committee had received regarding Jimenez's medical performance. Three days later, Jimenez was informed that the Committee decided to suspend

2

his medical staff privileges at WellStar.  The complaints considered by the Committee included allegations that Jimenez failed to promptly respond to emergency-room calls, failed to timely make rounds to see patients, and performed inappropriate operations.

As a result of the suspension, Jimenez was forbidden to interact with patients at WellStar hospitals and told that any attempt to do so would be considered trespassing.  The president of WellStar Health System then sent Jimenez a follow-up letter explaining in greater detail the findings on which the Committee had based his suspension.  The Committee found that Jimenez had engaged in eighteen instances of inappropriate patient treatment, which included his failure to respond to requests for emergency consultations, failure to maintain adequate neurological back-up for post-surgical patients, and failure to manage surgical complications in a timely manner.   Jimenez requested a hearing to appeal his suspension.

Five months later, in June 2006, Jimenez filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging the Committee suspended his medical staff privileges for impermissibly discriminatory reasons. Approximately eleven months after Jimenez had submitted his request for a hearing and six months after he had filed his charge with the EEOC, the hearing

still had not been granted and Jimenez withdrew his request. Because he had no medical staff privileges at any hospital during the majority of 2006, Jimenez was unable to obtain board certification and he lost his eligibility to renew his medical staff privileges with WellStar.

On January 8, 2008, Jimenez filed a complaint in federal court, alleging WellStar racially discriminated against him when it suspended his medical staff privileges. Jimenez alleged both that WellStar knew the performance-related complaints were false and that other, non-African American physicians who had committed more serious infractions were nevertheless not disciplined. Jimenez claims WellStar violated 42 U.S.C. § 1981 by both discriminating against him and by delaying a hearing on his suspension after he had reported the discrimination. Lastly, Jimenez claims WellStar violated 42 U.S.C. § 1985(3) by conspiring to interfere with his property, contract, and § 1981 rights because of his race.[1]

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007).

---

[1]Jimenez also raised various state law claims that are not at issue in this appeal.

4

## III.  ANALYSIS

A.    <u>Jimenez's 42 U.S.C. § 1981 Discrimination Claim</u>

Title 42 U.S.C. § 1981 creates a federal right of action for victims of certain types of racial discrimination.  To state a claim for non-employment[2] discrimination under § 1981, a plaintiff must allege (1) he is a member of a racial minority, (2) the defendant intended to racially discriminate against him, and (3) the discrimination concerned one or more of the activities enumerated in the statute.  *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).  The rights enumerated in the statute include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

The parties agree Jimenez has sufficiently alleged facts satisfying the first two prongs of a prima facie § 1981 claim.  The controversy centers on whether Jimenez adequately pled that WellStar's alleged discrimination concerned activities enumerated by the statute.  Jimenez advances three theories as to why suspension of his medical staff privileges violated rights protected under § 1981.  He contends the suspension of his privileges:  (1) violated his contractual

---

[2]Neither party argues WellStar was Jimenez's employer.

5

relationship with WellStar; (2) interfered with his right to contract with patients and third-party payors; and (3) deprived him of his property interest in his profession. Each of these theories fails.

1.     *Contractual Relationship with WellStar*

To state a claim under § 1981 for interference with a right to contract, "a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights." *Kinnon v. Acroub, Gopman & Assocs.*, 490 F.3d 886, 890 (11th Cir. 2007) (quotations omitted). Jimenez contends he had an implicit contract with WellStar, pursuant to which WellStar agreed to grant Jimenez medical staff privileges and, in turn, Jimenez agreed to treat patients at WellStar hospitals. Under such a theory, the staff privileges would serve as the consideration for the contract; they would not themselves create the contract. Thus, Jimenez concludes, WellStar's revocation of Jimenez's privileges amounted to a breach of contract, and, because the revocation was allegedly for discriminatory purposes, the revocation violated § 1981.

WellStar's policies make clear that medical staff privileges do not confer upon a physician any contractual rights.[3] Georgia law agrees. Under Georgia law,

---

[3]WellStar's Appointment Policy governing the grant of medical staff privileges to physicians states, "Membership on the Medical Staff does not create a contractual relationship between WellStar or any Medical Staff and the Medical Staff Member." At WellStar, medical staff members are required to meet certain "Minimum Objective Criteria," and the failure to do so may result in automatic termination of medical staff privileges. Further, summary suspension

6

medical staff bylaws, which govern medical staff privileges, do not create a contractual right to the continuation of those privileges.[4] *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 421 S.E.2d 731, 736 (Ga. Ct. App. 1992); *see also Stein v. Tri-City Hosp. Auth.,* 384 S.E.2d 430, 432 (Ga. Ct. App. 1989) (explaining hospitals have the power to create rules governing medical practice in their facilities to ensure competent care, so "[i]t naturally follows that a hospital authority has the power to revoke the staff privileges of a physician whom it finds to be incompetent or who fails to comply with [its] reasonable rules and regulations" (quotation and emphasis omitted)). Interpreting the bylaws governing staff privileges as a contract "would run counter to [Georgia's] policy of allowing the hospital to grant or withhold staff privileges from doctors it believes are unqualified to serve on its staff." *Robles v. Humana Hosp. Cartersville*, 785 F. Supp 989, 1002 (N.D. Ga. 1992).

Jimenez's theory that his medical staff privileges constituted consideration for a broader contract is ultimately unpersuasive. Were that theory accurate, many of the Georgia cases holding that medical staff privileges do not create a

---

of privileges can take effect immediately if there are "reasonable grounds to believe that the conduct or activities of a Practitioner pose a threat to the life, health, or safety of any patient, employee, or other person present" at the hospital.

[4]We do not foreclose the possibility that Jimenez and WellStar had some sort of contractual relationship, we merely note Jimenez did not have any contractual right against the suspension of his medical staff privileges, the act on which he bases his § 1981 claim.

7

contractual relationship would be rendered meaningless. In any case involving revocation of staff privileges, a plaintiff could argue that although the staff privileges themselves did not create a contract, the privileges were the consideration for the broader contractual relationship between the parties; the plaintiff could thereby circumvent Georgia's clear rule that medical staff privileges cannot create contractual liability. Thus, under Georgia law, alleging suspension of medical staff privileges does not implicate any contractual relationship, and, as such, cannot be the basis of § 1981 discrimination claim.

2. *Right to Contract with Patients and Third-Party Payors*

Jimenez argues WellStar's suspension of his medical staff privileges also interfered with his right to contract with patients and third-party payors. The record indicates, however, Jimenez had access to the patients he treated at WellStar only because they were admitted to the hospital while he was on call; thus, his relationship with them was a benefit of the medical staff privileges to which he was no longer entitled. The same conclusion precludes any claim Jimenez makes regarding interference with future contracts he might have formed with patients admitted after his suspension; in addition, such contracts are too speculative to form the basis of a § 1981 claim. *See Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) (holding racially motivated

8

interference with a contract can serve as the basis for a § 1981 claim, but interference with merely a possible future contract cannot). Moreover, Jimenez does not allege he was not paid for any services rendered prior to the suspension. As such, any interference with Jimenez's relationships with WellStar's patients cannot provide the basis for his § 1981 claim. It is illogical that Georgia law would grant WellStar the authority to suspend Jimenez's privileges to treat its patients while simultaneously obliging WellStar to allow Jimenez to contract with its patients for that treatment.

### 3. *Property Interest in Practicing Medicine*

Jimenez next claims the suspension of his medical staff privileges deprived him of his property interest in practicing medicine without the benefit of the same "proceedings for the security of . . . [that] property as is enjoyed by white citizens." *See* § 1981.

Property interests are established by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). Jimenez asserts that under Georgia law he had a property interest in continuing to practice medicine, and WellStar interfered with that interest by suspending his medical staff privileges.

9

As we explained in Part III.A. *supra*, however, under Georgia law a physician is not entitled to the continuation of his medical staff privileges. *See St. Mary's Hosp.*, 421 S.E.2d at 736. Doctors accept medical staff privileges knowing those privileges are subject to termination or suspension by the hospital. *Stein*, 384 S.E.2d at 432. Further, in Georgia, physicians do not have a broad property interest in continuing to practice medicine. *See see Alonso v. Hosp. Auth.*, 332 S.E.2d 884, 888 (Ga. Ct. App. 1985) (holding a physician does not have a protected property interest in his job, because there is no absolute authority to practice medicine in hospitals in Georgia). Thus, because Jimenez had no contractual or state-law entitlement to maintain medical staff privileges at WellStar specifically, or to continue his practice of medicine more broadly, the district court did not err in ruling Jimenez failed to properly allege a violation of § 1981 based on interference with a property interest.

B.     Jimenez's 42 U.S.C. § 1981 Retaliation Claim

Jimenez contends that his charge filed with the EEOC was the reason for which the Committee delayed the hearing on the suspension of his medical staff privileges. In the June 2006 EEOC charge, filed five months after his suspension, Jimenez alleged his medical staff privileges had been impermissibly suspended

because of his race.[5]   Six months after Jimenez filed the EEOC charge, the Committee still had not granted the hearing, and Jimenez elected to withdraw his request.

To state a retaliation claim under § 1981, a plaintiff must allege a defendant retaliated against him because the plaintiff engaged in statutorily protected activity. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). As with other statutory retaliation claims, such a claim under § 1981 requires that the protected activity involve the assertion of rights encompassed by the statute. *See Hawkins v. 1115 Legal Svc. Care*, 163 F.3d 684, 693 (2d Cir. 1998); *see also Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (stating to establish a retaliation claim under Title VII, the retaliation must be in response to a "statutorily protected activity"); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) (holding to establish a retaliation claim under the FMLA, the employee must first engage in an activity protected by the FMLA). The  issue, then, is whether Jimenez engaged in a statutorily protected activity by

---

[5]Prior to his suspension, Jimenez complained to hospital administrators that the head of neurosurgery, Dr. Moore, was not placing Jimenez on call or listing him as available to treat patients.  Jimenez claimed this violated "his personal rights."  Jimenez also wrote letters to the United States Department of Health and Human Services Civil Rights Office, copies of which he sent to WellStar, claiming his "rights as a human being" were violated when Moore once entered and stayed in Jimenez's operating room without Jimenez's permission; Jimenez claimed his rights were further violated when Wellstar Kennestone Hospital failed to take action against Moore after Jimenez reported the incident.  None of these allegations can be construed to implicate a conract or property interest.

reporting to the EEOC that his medical staff privileges had been discriminatorily suspended.

As Part III.A. explains, under Georgia law, a physician does not have either a contract interest or property interest in maintaining medical privileges at Georgia hospitals. Thus, because the suspension of medical staff privileges does not implicate any rights protected by § 1981, Jimenez's EEOC charge regarding his suspension cannot form the basis of his § 1981 retaliation claim. We accordingly conclude the district court did not err in dismissing Jimenez's retaliation claim.[6]

C.      Jimenez's 42 U.S.C. § 1985(3) Conspiracy Claim

Finally, Jimenez claims WellStar violated 42 U.S.C. § 1985(3) by conspiring to deprive him of his right to contract, his right to practice his profession, and his rights under § 1981. To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a

---

[6]Jimenez argues a claim for retaliation under § 1981 requires only that the plaintiff held that an objectively reasonable belief that he had engaged in statutorily protected activity, even if the activity was not actually protected. This Circuit has never held an objectively reasonable belief that the activity was protected is sufficient to support a retaliation claim under § 1981. But, even assuming arguendo that the standard applies in this case, Jimenez's belief was not objectively reasonable, given the clearly established Georgia law regarding medical staff privileges. *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002) (holding, in a *Title VII* case, "Plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable").

12

conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997). When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274, 113 S. Ct. 753, 763 (1993); *Park v. City of Atlanta*, 120 F. 3d 1157, 1162 (11th Cir. 1997). These rights include only select "serious constitutional right[s]." *Cook v. Randolph County*, 573 F.3d 1143, 1157 (11th Cir. 2009) (quotation omitted).

The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude. *See Bray*, 506 U.S. at 278, 113 S.Ct. at 764. Conversely, the Supreme Court has declared the freedom of speech, *id.*, and the rights protected under Title VII, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S. Ct. 2345, 2352 (1979), insufficient to form the basis of § 1985(3) actions against private conspirators. Other than the few rights the

Superme Court has addressed, district and circuit courts differ as to which rights warrant § 1985(3) protection.[7]

This Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes. *See, e.g., Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (analyzing Title VII and § 1981 claims concurrently because of their similarity). Thus, because conspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits, *Novotny*, 442 U.S. at 378, 99 S. Ct. at 2352, and because the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3), we hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim. Further, even if interference with contract and property rights could sustain a § 1985(3) claim, Jimenez has not adequately pled interference with any such rights here. *See supra*, Part III.A. The district court, therefore, did not err in ruling Jimenez failed to state a claim under § 1985(3).

---

[7]Some district courts have held a conspiracy to violate § 1981 may form the basis of a § 1985(3) claim. *See, e.g., Spectronics Corp. v. TCI/TKR of Jefferson County, Inc.*, 17 F. Supp 2d 669, 672 (W.D. Ky. 1998); *Chambers v. Omaha Girl's Club* No. 957, 629 F. Supp. 925, 940 (D. Neb. 1986); *Hudson v. Teamsters Local Union*, 536 F. Supp. 1138, 1147 (S.D. Ohio 1982). Other courts have held conspiracies to violate contract and property rights—violations that form the basis of § 1981 claims—cannot spawn § 1985(3) claims. *See, e.g., Brown v. Philip Morris Inc.*, 250 F.3d 789, 805–06 (3d Cir. 2001) (holding property and contract rights are statutorily, not constitutionally, protected and therefore a conspiracy to violate those rights is an insufficient foundation for a § 1985(3) claim).

## IV. CONCLUSION

Because Jimenez has failed to sufficiently allege that WellStar interfered with his contract or property rights, Jimenez has not stated a claim under either § 1981 or § 1985. Accordingly, we affirm the district court's dismissal as to all of Jimenez's claims.

**AFFIRMED.**