[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15162
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-01225-CV-T-23EAJ

RICHARD W. TROYANOS, JR.,
as personal representative of the
estate of Richard J. Troyanos,

Plaintiff-Appellant,

versus

JIM COATS, in his official
capacity as Sheriff of the
Pinellas County Sheriff's Office,
D.O. RICHARD F. MILLER,
individually and in his official
capacity as a doctor employed by
the Pinellas County Sheriff's Office,
RN RAPHAELITA E. SIMON-ROBINSON,
individually and in her official
capacity as a nurse employed by the
Pinellas County Sheriff's Office,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(April 13, 2010)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Richard W. Troyanos Jr. appeals the dismissal of the complaint filed on behalf of his father, Richard J. Troyanos, against Jim Coats, the Sheriff of Pinellas County, and Richard Miller and Raphaelita Simon-Robinson, members of the medical staff at the Pinellas County Jail. See 42 U.S.C. § 1983. Troyanos argues that the complaint stated a claim of deliberate indifference against Coats, Miller, and Simon-Robinson. We affirm.

## I. BACKGROUND

Richard J. Troyanos lived at the Boley Center for Behavioral Healthcare, which is a rehabilitation facility that provides residential and psychiatric services for mentally ill adults. Troyanos had a history of mental illness that included depression, bipolar disorder, and psychosis. Troyanos had attempted suicide on multiple occasions, and he had been committed involuntarily for psychiatric treatment on at least six occasions, Fla. Stat § 394.467.

On November 6, 2006, officers of the Pinellas County Sheriff's Office arrested Troyanos for an incident of domestic violence against his girlfriend and transported Troyanos to the Pinellas County Jail. During the intake process, an officer observed "scars on both of [Troyanos's] inner wrists from multiple self-inflicted wounds," and the officer reported her findings to Troyanos's screening nurse. Troyanos initially was calm and cooperative during the screening examination and the nurse recorded that Troyanos had a slight edema and ecchymosis on his wrists.

Troyanos later became agitated and uncooperative. Staff at the jail handcuffed Troyanos and placed him in a holding cell to "deescalate." Inside the cell, Troyanos banged his head violently against the wall.

Simon-Robinson evaluated Troyanos and recorded that his forehead was red where he had hit his head on the wall of his cell. Simon-Robinson observed that Troyanos was "babbling," "belligerent," and experiencing an "alteration in mental status," and Robinson concluded that Troyanos was "mentally challenged." Simon-Robinson found no "contraindications to placement into security restraints or special accommodations," and she instructed officers to restrain Troyanos in a "Pro-Straint Chair." Robinson also placed Troyanos on "Close Observation Status," which required that a detention officer observe Troyanos every 15

3

minutes.

After Troyanos was released from the chair three to four hours later, an evaluating nurse observed that Troyanos was extremely agitated, unable to focus, spoke in a rambling manner, and exhibited an altered thought process. Miller later evaluated Troyanos and observed that he was angry, agitated, nasty, hostile, uncooperative, and verbally abusive. Miller did not perform a mental health screening. Miller later received reports that Troyanos had become increasingly agitated and examined Troyanos a second time. Miller diagnosed Troyanos with a psychotic disorder and ordered him sedated.

On November 7, 2006, Troyanos was agitated, grabbed the reel to an IV extension cord and swung it above his head, jumped up and down, yelled, and banged his head against a window. Detention staff tackled and physically restrained Troyanos. Miller arrived later to evaluate Troyanos, but finding him asleep, Miller left.

The following day, jail staff checked Troyanos every 15 minutes. The staff observed Troyanos sitting on the floor of his cell with his head in his hands and upset apparently because he was unable to "contact his son by telephone." Two inmates housed near Troyanos's cell reported that Troyanos was crying and shaking the bars of his cell.

4

On November 9, 2006, jail staff continued to observe Troyanos every 15 minutes, but Troyanos alleged that deputies failed to check him between 4:30 p.m. and 5:00 p.m. Around 5:14 p.m., a staff member noticed that Troyanos was sitting with his back against the cell door. Troyanos failed to respond to inquiries.

Troyanos had committed suicide by strangling himself. A noose was found around his neck. Troyanos formed the noose from the elastic waistband of his inmate uniform pants, which he had cut using the sharp edge of a shredded plastic cup.

Troyanos's son filed a complaint that alleged Coats, Simon-Robinson, and Miller had violated Troyanos's civil rights under the Fourteenth Amendment, 42 U.S.C. § 1983, and state law, Fla. Stat. §§ 768.16–.26. The first count of the complaint alleged that Coats had failed to train or supervise his employees to "monitor, screen, assess, house, and/or protect mentally ill" detainees. The second and third counts of the complaint alleged that Coats had violated the Florida Wrongful Death Act. The fourth and fifth counts of the complaint alleged that Simon-Robinson and Miller had failed to assess and treat Troyanos as at risk of committing suicide.

Coats, Simon-Robinson, and Miller moved to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and the district court granted that motion. The

5

district court ruled that the conduct of Miller and Robinson fell "short of deliberate indifference" and the employees were entitled to qualified immunity. The district court also ruled that "[n]o basis exist[ed] for an inadequate training claim" against Coats based on Troyanos's allegation of a "single incident" of suicide. The district court declined to exercise supplemental jurisdiction over the claims of wrongful death under Florida law.

## II. STANDARD OF REVIEW

We apply two standards of review in this appeal. We review de novo a dismissal for failure to state a claim. Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1308 (11th Cir. 2010). We accept the allegations in the complaint as true, and draw all reasonable inferences in favor of Troyanos. Id. "'We review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion.'" Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC, 596 F.3d 1313, 1328 (11th Cir. 2010) (quoting Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 738 (11th Cir. 2006)).

## III. DISCUSSION

Troyanos challenges the dismissal of his complaint. Troyanos argues that his complaint stated a claim of deliberate indifference against Simon-Robinson and Miller. Troyanos also argues that his complaint stated a claim of inadequate

6

training against Coats, and Troyanos asks that we "order the [district] court to accept jurisdiction of" the state law claims against Coats.

Troyanos's complaint fails to allege that Simon-Robinson or Miller ignored a strong likelihood that Troyanos would commit suicide. Deliberate indifference requires evidence of "something more than a medical judgment call, an accident, or an inadvertent failure." Rogers v. Evans, 792 F.2d 1052, 1060 (11th Cir. 1986) (en banc). "[T]o prevail under section 1983 for [a] violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff must show that . . . jail official[s] displayed 'deliberate indifference' to the prisoner's taking of his own life." Edwards v. Gilbert, 867 F.2d 1271, 1274–75 (11th Cir. 1989). The complaint did not mention that Simon-Robinson or Miller knew of Troyanos's suicidal tendencies, see id. at 1275, ignored Troyanos when he acted out, or delayed or withheld from him mental or medical treatment. The complaint instead alleged that Simon-Robinson and Miller attended to Troyanos's psychiatric needs and ordered that jail staff monitor Troyanos regularly. Troyanos complains that Simon-Robinson and Miller should have performed various assessments and their conduct was "negligent and below applicable standards of care" for their professions, but that allegation "is not enough for section 1983 liability." Schmelz v. Monroe County, 954 F.2d 1540, 1545 (11th Cir. 1992); see Rogers, 792 F.2d at

7

1059 (dismissing complaints against warden of women's prison and other officials for suicide of inmate that was based on allegations that officials failed to provide a "desirable standard of medical care").  Simon-Robinson and Miller cannot be faulted for failing to foresee that Troyanos would commit suicide using the elastic in his pants.  Cagle, 334 F.3d at 989 (vacating denial of summary judgment in favor of county jailer when inmate hung himself with elastic from his underwear).  The district court did not err by dismissing the complaint against Simon-Robinson and Miller.

Troyanos's complaint also fails to allege that Coats was deliberately indifferent because he did not properly train, supervise, or discipline his staff.  We are not required to inquire about Coats's customs or policies for treating mentally ill inmates because the complaint failed to state a claim that jail officials violated Troyanos's constitutional rights.  Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009) ("Analysis of a state entity's custom or policy is unnecessary, however, when no constitutional violation has occurred.").  The district court correctly dismissed the complaint against Coats.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims against Coats.  There was no reason for the district court to exercise jurisdiction over the state law claims

8

after the court dismissed the only claim against Coats over which it had original jurisdiction. In fact, we "encourage[] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

## IV. CONCLUSION

The dismissal of Troyanos's complaint is **AFFIRMED**.